Carly M. Roman, CA Bar No. 349895
Andrew Gunem, CA Bar No. 354042
Samuel J. Strauss, *pro hac vice forthcoming*
**STRAUSS BORRELLI PLLC**
One Magnificent Mile
980 N Michigan Avenue, Suite 1610
Chicago IL, 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109

Attorneys for Plaintiff and Putative Class

# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERNEST HILL, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>INLAND EMPIRE INDUSTRIAL SUPPLIES, INC.,<br><br>*Defendant*. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT

1. Ernest Hill ("Plaintiff") brings this class action against Inland Empire Industrial Supplies, Inc. ("Defendant") under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

2. Upon information and good faith belief, Defendant routinely violates 47 C.F.R. § 64.1200(c) and, in turn, 47 U.S.C. § 227(c)(5), by delivering, or causing to be delivered, more than one advertisement or marketing message to residential numbers registered with the National Do-Not-Call Registry ("DNC Registry")

without permission required by the TCPA.

## PARTIES

3. Plaintiff is a natural person.

4. Defendant is a corporation that resides in this District.

## JURISDICTION AND VENUE

5. This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

6. This Court has personal jurisdiction over the Defendant and venue is proper because the Defendant resides in this District.

## INTRODUCTION

7. "Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers' *id.* § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms' *id.* § 2(9).

8. "The law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations,

he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.'). Private suits can seek either monetary or injunctive relief. *Id.* This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people. The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649-50 (4th Cir. 2019).

## PLAINTIFF'S ALLEGATIONS

9. Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

10. Plaintiff's residential telephone number is (360) 204-XXXX.

11. Plaintiff personally listed his telephone number on the National Do-Not-Call Registry in November of 2023 and has not removed it from the Registry since that time.

12. Plaintiff uses this telephone number for personal, residential, and household purposes.

13. Plaintiff does not use his residential telephone number for business purposes. However, prior to 2020, Plaintiff used his residential number for business and residential purposes. The business dissolved in 2019 or 2020, well before Plaintiff registered his number on the National Do-Not-Call Registry.

CLASS ACTION COMPLAINT
-3-

14. Plaintiff never consented to receive calls from Defendant.

15. Despite this, Plaintiff received over twenty calls and voicemail solicitations from Defendant over the past year.

16. Plaintiff received a call from Defendant's telephone number, (479) 377-9920, on July 3, 2025 at 11:00 a.m.

17. Plaintiff received another call from Defendant's telephone number (479) 377-9920, on July 30, 2025 at 3:27 a.m.

18. These calls were made for the purpose of advertising Defendant's industrial supplies services. Specifically, Defendant was trying to get Plaintiff to buy tools.

19. Plaintiff has instructed Defendant to stop calling him multiple times on the phone, to no avail.

20. In a further attempt to stop Defendant's persistent and harassing telephone solicitations, Plaintiff sent Defendant a letter requesting that Defendant explain its illegal telemarketing.

21. Plaintiff sent the letter via certified U.S. mail to Defendant at the following address on August 7, 2025:

> Inland Empire Industrial Supplies, Inc.
> 18413 Oak Park Drive
> Riverside, CA 92504

22. Plaintiff requested that Defendant respond to his letter in writing by August 20, 2025.

23. The Defendant responded to the Plaintiff's letter and did not deny the calls to the Plaintiff.

24. Other individuals suffer similar harassing telephone solicitations from Defendant. Defendant's Better Business Bureau page is riddled with similar

complaints, and has over 200 complaints in just the last 3 years.[1] Below are some examples:

Example BBB Complaint 1:

> **Initial Complaint**
> Date: 06/04/2025
> Type: Order Issues
> Status: Answered
>
> About 3 years ago I recieved an unsolicited call from a sales *** of Inland Empire Industrial Supplies. He asked me if I wanted a free set of drill bits, if after 60 days I didn't like them I could send them back. I wasn't interested in the drill bits, but they evidently sent them anyway. The drill bits went to an address that I lived at over a decade ago in a different state than I reside now. Needless to say, I never recieved any tools from them. They have been calling me for 3 years trying to get me to pay for these drill bits. This company is a total fraud!

Example BBB Complaint 2:

> **Initial Complaint**
> Date: 04/11/2025
> Type: Product Issues
> Status: Answered
>
> A phone call was placed to our home in December 2024. Our son answered. The individual from the indicated business was very insistant on sending tools, despite repeated phrases by our son; "No, we don't need any tools," "No, we have all the tools we need," "No." He insisted on sending them. They arrived, and I set them aside. We have taken no tools out of the box. We want to send them back, but do not want to pay to do so. We did not place this order. I placed a call to the phone number provided. The individual was very rude to me and short with replies and hung up on me. Apparently they would send a return label only in the first 30 days. My son did not know that, and I was not aware. We just want a paid shipping label to return the items. We don't need an apology or anything else from the company. We would like to know if this company is a legitimate company.

\\
\\
\\
\\
\\

---

[1] *See Business Profile*: *Inland Empire Industrial Supplies, Inc.*, BETTER BUSINESS BUREAU, https://www.bbb.org/us/ca/riverside/profile/industrial-supply/inland-empire-industrial-supplies-inc-1126-13188901/complaints (last visited August 8, 2025).

Example BBB Complaint 3:

> **Initial Complaint**
> Date: 02/17/2025
> Type: Sales and Advertising Issues
> Status: Answered
>
> in 2024 ************************* sent a cheap box of drill bits for free i did not agree to pay for these they had all my information already and sent me a bill for $500 i dont have the exact dates or how much money they where asking. they kept on calling me for payment i looked them up and seem like they are trying to scam me. im only making this report because they called me and threaten to take me to collections for something i never agreed too there phone wont return calls said they had proof of me saying i would pay for the junk they sent but wont send me the evidence, I am buisness owner and this seems like a scam they are calling me with spoof phone numbers -

25.   Plaintiff and other individuals who received these voicemails suffered an invasion of privacy and were harassed by the conduct of Defendant.

## CLASS ALLEGATIONS

26.   Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

27.   Plaintiff brings this action on behalf of himself and the following classes (the "Class") pursuant to Federal Rule of Civil Procedure 23:

> **National DNC Class:** All persons in the United States whose (1) telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing call from or on behalf of Defendant promoting Defendant's goods or services, (3) within a 12-month period (4) at any time in the period that begins four years before the date of filing this Complaint to trial.
>
> **IDNC Class:** All persons within the United States who, (1) within the four years prior to the filing of this lawsuit through the date of class certification, (2) who received more than one telemarketing call from or on behalf of Defendant promoting Defendant's goods or services to said person's residential telephone number (3) within a 12-month period, (4) after communicating to Defendant

that they did not wish to receive such calls.

28. Excluded from the class are Defendant, Defendant's officers and directors, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendant has or had a controlling interest.

29. **Numerosity**: The exact number of Class Members is unknown but based on the *en masse* nature of telemarketing is believed to be at least hundreds of persons at this time, and individual joinder in this case is impracticable. Class Members can be easily identified through Defendant's records, or those of its agents.

30. **Typicality**: Plaintiff's claims are typical of the claims of other Class Members in that Plaintiff, and Class Members, sustained damages arising out of Defendant's telemarketing calls and Class Members sustained similar injuries and damages as a result of Defendant's uniform illegal conduct.

31. **Adequacy**: Plaintiff will fairly and adequately represent and protect the interests of the Class and has retained counsel competent and experienced in complex class actions to vigorously prosecute this action on behalf of the Class. Plaintiff has no interests that conflict with, or are antagonistic to those of, the Class, and Defendant has no defenses unique to Plaintiff.

32. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and members of the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to, the following:

    a. whether Defendant systematically made multiple telephone calls to members of the National Do Not Call Registry Class;

b.    whether Defendant made calls to Plaintiff and members of the National Do Not Call Registry Class without first obtaining prior express written consent to make the calls and;

c.    whether members of the Class are entitled to treble damages based on the willfulness of Defendant's conduct.

33. **Superiority**: Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail. There are hundreds of Class Members, such that joinder of all members is impracticable.

34. In addition to satisfying the prerequisites of FED. R. CIV. P. 23(a), Plaintiff satisfies the requirements for maintaining a class action under FED. R. CIV. P. 23(b) because:

a.    The prosecution of separate actions by the individual Class Members would create a risk of inconsistent or varying adjudication which would establish incompatible standards of conduct for Defendant;

b.    The prosecution of separate actions by individual Class Members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other Class Members not parties to the adjudications, or substantially impair or impede their ability to protect their interests;

c.    Defendant has acted or refused to act on grounds that apply generally to the proposed Class, thereby making final injunctive relief or declaratory relief herein appropriate with respect to the proposed Class as a whole; and

d.    Questions of law or fact common to the members of the Class predominate over any questions affecting only individual members, and that a class

action is superior to other available methods for the fair and efficient adjudication of the controversy.

## COUNT I
### Violations of the TCPA, 47 U.S.C. § 227
### (On Behalf of Plaintiff and the National DNC Class)

35. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

36. It is a violation of the TCPA to initiate any telephone solicitation to a residential telephone subscriber who has registered his or her telephone number on the National Do Not Call Registry. 47 C.F.R. 64.1200(c)(2).

37. Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf violated the TCPA by causing multiple telephone solicitation calls to be initiated to Plaintiff and members of the National DNC Class in a 12-month period, despite the person's registration of his or her telephone numbers on the National Do Not Call Registry.

38. These violations were willful or knowing.

39. As a result of Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf's violations of the TCPA's national do-not-call rule, Plaintiff and members of the National DNC Class are each entitled to an injunction and up to $500 in damages for each such violation. 47 U.S.C. § 227(c)(5).

40. Because such violations were willful or knowing, the Court should treble the amount of statutory damages, pursuant to 47 U.S.C. § 227(c)(5).

## COUNT II
### VIOLATION OF 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(d)
### (On Behalf of Plaintiff and the IDNC Class)

41. Plaintiff re-alleges and incorporates the foregoing allegations set forth as if fully set forth herein.

42. In pertinent part, 47 C.F.R. § 64.1200(d) provides:

> No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:
>
> (1) *Written policy*. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.
>
> (2) *Training of personnel engaged in telemarketing*. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.
>
> (3) *Recording, disclosure of do-not-call requests.* If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request.

> A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.

43. Under 47 C.F.R § 64.1200(e), the rules set forth in 47 C.F.R. § 64.1200(d) are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers.

44. Plaintiff and the Class Members are residential telephone subscribers who received more than one text message made for purposes of telemarketing or solicitation purposes from Defendant, who has failed to implement the requisite procedures and personnel training as demonstrated by its repeated failure to honor opt-out requests.

45. Plaintiff and the Class Members made requests to Defendant not to receive texts from Defendant.

46. Plaintiff and the Class Members revoked any consent they may have previously provided Defendant by replying with a "stop" or similar opt-out instruction in response to Defendant's calls.

47. Plaintiff and the Class Members terminated any business relationship they may have previously had with Defendant by replying with a "stop" or similar opt-out instruction in response to Defendant's calls. *See* 47 C.F.R. § 64.1200(f)(5)(i). (A consumer's "seller-specific do-not-call request * * * terminates an established business relationship for purposes of telemarketing and telephone solicitation even if the subscriber continues to do business with the seller.")

48. Plaintiff and the Class Members revoked any consent they may have provided Defendant by responding with "stop" or similar opt-out instructions.

CLASS ACTION COMPLAINT
-11-

49. Defendant continued to text message Plaintiff and the Class Members to harass them into making purchases from Defendant.

50. Defendant failed to honor Plaintiff's and the Class Members' opt-out requests.

51. Defendant's refusal to honor opt-out requests is indicative of Defendant's failure to implement a written policy for maintaining a do-not-call list and to train its personnel engaged in telemarketing on the existence and use of the do-not-call-list.

52. Plaintiff and the Class Members are informed and believe that Defendant has not instituted procedures for maintaining a list of persons who request not to receive telemarketing calls or calls.

53. Plaintiff and the Class Members are informed and believe that Defendant does not have a written policy, available upon demand, for maintaining a do-not-call list.

54. Plaintiff and the Class Members are informed and believe that Defendant does not train its personnel engaged in any aspect of telemarketing in the existence and use of the do-not-call list.

55. The details and specific facts regarding Defendant's failure to maintain the required policies and procedures, as well as personnel training, are solely within Defendant's knowledge and possession.

56. Defendant has violated 47 C.F.R. § 64.1200(d) by failing to honor opt-out requests, failing to maintain the required policies and procedures, and failing to train its personnel engaged in telemarketing.

57. Pursuant to section 227(c)(5) of the TCPA, Plaintiff and the Class Members are entitled to an award of $500.00 in statutory damages, for each and every negligent violation.

58. As a result of Defendant's knowing or willful conduct, Plaintiff and the Class Members are entitled to an award of $1,500.00 in statutory damages per violation.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the National DNC Class and IDNC Class, respectfully requests that the Court enter judgment against Defendant for:

A. Certification of the classes as alleged herein;

B. Appointment of Plaintiff as representative of the Classes;

C. Appointment of the undersigned as counsel for the Classes;

D. Damages to Plaintiff and members of the classes pursuant to 47 U.S.C. § 227(c)(5);

E. Attorneys' fees and costs, as permitted by law; and

F. Such other or further relief as the Court deems just and proper.

DATED this 10th day of September, 2025.

By */s/ Carly M. Roman*
Carly M. Roman, CA Bar No. 349895
Andrew Gunem, CA Bar No. 354042
Samuel J. Strauss, *pro hac vice forthcoming*
**STRAUSS BORRELLI PLLC**
One Magnificent Mile
980 N Michigan Avenue, Suite 1610
Chicago IL, 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109
croman@straussborrelli.com
agunmen@straussborrelli.com
sam@straussborrelli.com

*Attorneys for Plaintiff and the Putative Class*